IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-00432-MEH

SANTIAGO ABREU,

      Plaintiff,

v.

TAVIN FOODS, INC. d/b/a Riverbend Market & Eatery,

      Defendant.

## ORDER

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Defendant's Motion to Dismiss [filed October 1, 2016; ECF No. 35]. The motion is fully briefed, and the Court finds oral argument would not materially assist in its adjudication of the motion. For the reasons that follow, the Court denies the motion to dismiss.[1]

## BACKGROUND

Plaintiff, Santiago Abreu, initiated this public accommodations action against the Defendant, Tavin Foods, Inc. d/b/a Riverbend Market & Eatery, on February 23, 2016.

### I.  Statement of Facts

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by the Plaintiff in his Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendant is the lessee, operator, owner and/or lessor of the subject Real Property, which is located at 60006 U.S. Highway 285, Bailey, Colorado 80470 ("Premises") and is the owner of the

---

[1] On September 26, 2016, the parties consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c) and D.C. Colo. LCivR 40.1.  *See* ECF No. 26.

improvements where the Premises is located.

Plaintiff is an individual with numerous disabilities including moderately severe multiple sclerosis and is also paraparetic. These conditions cause sudden onsets of severe pain, require Plaintiff to use a wheelchair, and significantly limit Plaintiff's life activities. Certain medical treatments are available to Plaintiff pursuant to the laws of the State of Colorado that are not otherwise available to Plaintiff in Florida. As such, Plaintiff frequently travels to Colorado and averages two trips per year for the past four years. Weather and health permitting, Plaintiff will continue this pattern of travel.

At the time of Plaintiff's visit to the Premises on July 14, 2015, Plaintiff required accessible means of entry at the Premises. Plaintiff personally visited and dined at the Premises, but contends he was denied full and equal access and enjoyment of the facilities, services, goods, and amenities within the Premises due to the Defendant's alleged violations of Title III of the Americans with Disabilities Act ("ADA") including:

- Failing to provide the minimum required circular turning clearance for a person with a disability due to a wall or some other obstruction that does not comply with the standards set forth in 2010 ADAAG §§304, 304.3, 304.3.1, 603, 603.2 and 603.2.1;

- Providing grab bars of improper horizontal length or spacing on the back or side wall in violation of 2010 ADAAG §§604, 604.5, 604.5.1, 604.5.2, 609 and 609.4.

- Providing sinks and/or counter tops greater than 34 inches high or providing the same without clear space underneath to allow for knee or toe clearance in violation of 2010 ADAAG §§305, 306, 606, 606.2 and 606.3.

- Failing to provide a urinal designed for a person with a disability where the rim height is no more than 17 inches from the finished floor in violation of 2010 ADAAG §§605 and 605.2.

2

- Providing grab bars of improper horizontal length or spacing on the back or side wall in violation of 2010 ADAAG §§604, 604.5, 604.5.1, 604.5.2, 609 and 609.4.

- Failing to provide toilet paper dispensers in the proper position in front of the water closet or at the correct height above the finished floor in violation of 2010 ADAAG §§604, 604.7 and 309.4.

- Failing to provide mirrors located above lavatories or counter tops at the proper height above the finished floor in violation of 2010 ADAAG §§603 and 603.3.

- Providing a bathroom door that improperly swings into the required clear floor space or clearance for any fixture in violation of 2010 ADAAG §§304, 305, 305.3, 603 and 603.2.3.

- Providing counter heights exceeding 36 inches making it impossible to service a person with a disability in violation of 2010 ADAAG §§904, 904.4, 904.4.1 and 904.4.2.

- Failing to provide persons with a disability with a continuous path of travel connecting all essential elements of the facility in violation of 2010 ADAAG §§206, 206.1, 206.2, 206.2.1, 206.2.2, 206.2.4 and 206.2.5, and/or §§4.3.1 and 4.3.2 of the 1991 ADA Standards.

- Failing to provide parking for individuals with disabilities as required by 2010 ADAAG §§208 and 208.1.

- Failing to provide van disabled parking spaces as required in violation of 2010 ADAAG §§208, 208.1, and 208.2.4.

- Failing to provide signs for disabled parking or van disabled parking in violation of 2010 ADAAG §§502 and 502.6.

- Failing to provide continuous clear width to an adjacent accessible route of travel for a persons with a disability due to improper design of the parking spaces or access aisles in violation of 2010 ADAAG §§502, 502.1 and 502.7.

Independent of his personal desire to have access to the Premises, Plaintiff also acts as a "tester" for the purpose of discovering, encountering, and engaging discrimination against the disabled in public accommodations. When acting as a "tester," Plaintiff employs a routine practice. He personally visits the public accommodation; engages all of the barriers to access, or at least of those that Plaintiff is able to access; tests all of those barriers of access to determine whether and the extent to which they are illegal barriers to access; proceeds with legal action to enjoin such discrimination; and subsequently returns to the premises to verify its compliance or noncompliance with the ADA and to otherwise use the public accommodation as members of the able-bodied community are able to do. Independent of other subsequent visits, Plaintiff also intends to visit the subject Premises regularly to verify its compliance or non-compliance with the ADA, and its maintenance of the accessible features of the Premises. In this instance, Plaintiff, in his individual capacity and as a "tester," alleges he visited the Premises, encountered barriers to access at the Premises, and engaged and tested those barriers.

## II.     Procedural History

Based on these allegations, Plaintiff asserts claims for violations of Title III of the ADA. Compl., ECF No. 1 at 4–10. The Plaintiff seeks declaratory and injunctive relief to remedy the alleged violations. *Id.* at 10–11.

Defendant filed the present motion arguing the "Plaintiff does not allege or produce any evidence that he has exhausted his administrative remedies with the [Colorado Civil Rights Division] as he is required to do by the federal and state laws from which he seeks relief." Mot., ECF No. 35 at 4. Plaintiff responds that the cases on which Defendant relies have been discredited by other opinions examining the statute and finding Title III does not require exhaustion of remedies. Defendant replies that the opinions on which it relies are published decisions from this

4

District and any opinions on which Plaintiff relies from other districts are not binding on this Court.

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Okla.,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more

than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## ANALYSIS

Defendant's motion raises a single question of law: does Title III of the ADA incorporate the provision from Title VII requiring that a claimant exhaust state administrative remedies before bringing a claim under the statute? Defendant is correct that the Tenth Circuit has not addressed this question, but some judges in this District have answered it in the affirmative. For the following reasons, this Court sides with the majority of courts, including three courts of appeal, finding that the statute does *not* require exhaustion.

At the outset, the Court notes that it agrees with Defendant and rejects two of Plaintiff's arguments: (1) that the Honorable John L. Kane reversed a prior order in *Howard v. Cherry Hills Cutters, Inc.*, 979 F. Supp. 1307, 1308 (D. Colo. 1997) ("*Howard II*"); and (2) Plaintiff's implication that had he brought a claim under state law, only then would Plaintiff be required to comply with the statutory requirements of such law. First, Senior Judge Kane did *not* reverse any prior order in *Howard II*; rather, in *Howard v. Cherry Hills Cutters, Inc.*, 935 F. Supp. 1148, 1150 (D. Colo. 1996) ("*Howard I*"), Judge Kane permitted the plaintiff to file an amended complaint seeking injunctive relief under Title III of the ADA, but "reminded" the plaintiff of "the notice requirement" saying,

"By making § 2000a–3 applicable to enforcement actions under 42 U.S.C. § 12188, Congress has imposed a state law exhaustion requirement on disabled individuals seeking to enforce their rights under Subchapter III of the ADA." *Id.* The following year, in *Howard II*, Judge Kane ***affirmed*** this prior order by repeating the conclusion in *Howard I* and finding, "§ 2000a–3(c) required [plaintiff] to notify state authorities of the act or practices of which he was complaining at least 30 days before filing his Amended Complaint." 979 F. Supp. at 1308–09. The Plaintiff here was incorrect that Judge Kane had reversed his prior order.

Similarly, the Plaintiff's argument that his case is distinguishable from *Howard, et al.* based on the fact that he did not bring a state law claim is incorrect. Judge Kane made no distinctions between any state or federal claims in *Howard I* and *Howard II*, and specifically referred to federal law in finding an exhaustion requirement. *See id.*

With that said, the Court agrees with Plaintiff, with a judge in this District, and with a majority of courts across the country finding that Title III of the ADA does not incorporate the provision from Title VII governing exhaustion of state remedies. As so cogently explained by the Honorable Alan Johnson in *Colo. Cross Disability Coal. v. Hermanson Family Ltd. P'ship*, No. 96-WY-2490-AJ, *et al.*, 1997 WL 33471624, at *2–*3 (D. Colo. Mar. 3, 1997):

> [Title III of the ADA,] 42 U.S.C. § 12188(a) provides, in part:
>
> (a) In general
>
> (1) Availability of remedies and procedures
>
> The remedies and procedures set forth in section 2000a–3(a) of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of section 12183 of this title. Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions.

(2) Injunctive relief

In the case of violations of sections 12182(b)(2)(A)(iv) and section 12183(a) of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter. Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this subchapter.

(b) Enforcement by Attorney General

* * * *

Clearly, this section adopts only portions of 2000a–3(a), rather than all of 42 U.S.C. § 2000a–3. This section adopts portions of the federal civil rights statutes that are to be considered in applying the ADA. Specifically,[Title VII of the Civil Rights Act,] 42 U.S.C. § 2000a–3, entitled civil actions for injunctive relief, provides:

(a) Persons aggrieved; intervention by Attorney General; legal representation; commencement of action without payment of fees, costs, or security

Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2000a–2 of this title, a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved and, upon timely application, the court may, in its discretion, permit the Attorney General to intervene in such civil action if he certifies that the case is of general public importance. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the civil action without the payment of fees, costs, or security.

(b) Attorney's fees; liability of United States for costs

In any action commenced pursuant to this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, and the United States shall be liable for costs the same as a private person.

(c) State or local enforcement proceedings; notification of State or local authority; stay of Federal proceedings

In the case of an alleged act or practice prohibited by this subchapter which occurs in a State, or political subdivision of a State, which has a State or local

8

> law prohibiting such act or practice and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no civil action may be brought under subsection (a) of this section before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority by registered mail or in person, provided that the court may stay proceedings in such civil action pending the termination of State or local enforcement proceedings.
>
> * * * *
>
> The issue before the Court arises because some of the courts that have construed these sections have determined that the reference in 42 U.S.C. 12188 is to ***all*** of 42 U.S.C. § 2000a–3, rather than just 42 U.S.C. § 2000a–3(a). This is contrary to the express language in § 12188, which only adopts the remedies and procedures set out in 2000a–3(a).

*Hermanson*, 1997 WL 33471624, at *3–*4 (emphasis added). This Court agrees with Judge Johnson's analysis and conclusion: Section 12188 incorporates *only* Section 2000a-3(a), not all of 2000a-3, including subsection (c).

Some cases on which Defendant relies have simply concluded that Title III of the ADA incorporates Title VII's exhaustion requirement without any meaningful analysis, or they are not applicable. *See Howard II*, 935 F. Supp. at 1150 ("By making § 2000a–3 applicable to enforcement actions under 42 U.S.C. § 12188, Congress has imposed a state law exhaustion requirement on disabled individuals seeking to enforce their rights under Subchapter III of the ADA."); *Howard I*, 935 F. Supp. at 1150 (same); *White v. Denny's Inc.*, 918 F. Supp. 1418, 1423 (D. Colo. 1996) (Title VII race discrimination case; not applicable). In a later case, however, Judge Kane expands on his conclusion in *Howard II* saying,

> The plain language of 42 U.S.C. § 12188 compels the construction I applied in *Howard*. 42 U.S.C. § 12188 states, "the *remedies and procedures* set forth in section 204(a) of the Civil Rights Act of 1964 (42 U.S.C.2000a–3(a)) are the *remedies and procedures* of this title." (emphasis added). Section 2000a–3(a) sets forth the *remedies* and authorizes aggrieved parties to commence a civil action for injunctive relief. Section 2000a–3(c) sets forth the *procedure* for commencing a civil action and imposes a pre-suit notice requirement on claims for relief under § 2000a–3.

9

> If Congress intended only to incorporate the Civil Rights Act's remedies, and not procedures, it would have excluded the word "procedures" from 42 U.S.C. § 12188. Accordingly, § 2000a–3(a) is, in turn, limited by the notification requirement of § 2000a–3(c), which provides, in cases where state or local law also prohibit the discriminatory acts or practices alleged, that individuals provide written notice to the appropriate state or local authorities at least 20 days before filing suit in federal court.

*Lillard v. Sunflower Farmers Mkt.*, No. 12-cv-01497-JLK, 2012 WL 5936543, at *1 (D. Colo. Nov. 27, 2012) (citations omitted) (emphasis in original). This Court respectfully disagrees that Congress intended to incorporate the *remedies* of Section 2000a–3(a) and the *procedure* of Section 2000a–3(c) into Section 12188, since Section 2000a-3(a) itself contains "procedures" such as permitting the intervention of the Attorney General and the appointment of an attorney for the complainant. In fact, Section 12188 specifically identifies "*[t]he remedies and procedures set forth in section 2000a–3(a)* of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination . . . ." 42 U.S.C. § 12188(a) (emphasis added).

In sum, this Court aligns with those courts finding that a Title III disability claimant need not exhaust administrative remedies before filing a lawsuit. *See, e.g., Hermanson*, 1997 WL 33471624, at *3–*4; *Botosan v. Paul McNally Realty*, 216 F.3d 827, 831 (9th Cir. 2000) ("§ 12188(a)(1) does not implicitly incorporate § 2000a–3(c). A plaintiff in a private Title III action is not required to provide notice to any state or local agency as a prerequisite to filing suit.") (collecting cases); *McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138 (2d Cir. 2007) ("The language and structure of the ADA demonstrate that Title III, unlike Title I, does not require administrative exhaustion."); *Thomas v. Salvation Army S. Territory*, -- F.3d --, 2016 WL 6595949, at *4 (4th Cir. Nov. 8, 2016) (finding the plaintiff's Title III ADA claims were "not subject to the administrative exhaustion requirement).

## CONCLUSION

"There is good reason to conclude that Congress intentionally omitted the exhaustion requirement for public-accommodations claims, as it would make little sense to require a plaintiff challenging discrimination in public accommodations to file a charge with the EEOC, an agency with responsibility for and expertise in matters of *employment* discrimination." *McInerney*, 505 F.3d at 138–39 (emphasis added). Here, the Court finds that Plaintiff was not required to exhaust any state administrative remedies before filing this Title III ADA action and, thus, the Court **denies** Defendant's Motion to Dismiss [filed October 1, 2016; ECF No. 35].

ORDERED at Denver, Colorado this 14th day of November, 2016.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge