1

```
1            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLORADO
2
     Case No. 16-cv-00432-PAB-MEH
3    _____

4    SANTIAGO ABREU,

5         Plaintiff,

6    vs.

7    TAVIN FOODS, INC.,

8         Defendant.
     _____
9

10           Proceedings before MICHAEL E. HEGARTY, United

11   States Magistrate Judge, United States District Court for the

12   District of Colorado, commencing at 2:11 p.m., July 14, 2016,

13   in the United States Courthouse, Denver, Colorado.

14   _____

15           WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16   ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17   _____

18                          APPEARANCES

19           RICHARD LESLIE, Attorney at Law, appearing for

20   the Plaintiff.

21           MICHAEL ABBONDANZA, appearing pro se.
     _____
22

23                     SCHEDULING CONFERENCE

24

25
```

```
 1                    P R O C E E D I N G S
 2              (Whereupon, the within electronically recorded
 3    proceedings are herein transcribed, pursuant to order of
 4    counsel.)
 5              THE COURT:  All right, I guess we'll do these one
 6    at a time.  Is that what we want to do or call all four
 7    cases?  It's anybody's preference.
 8              MR. LESLIE:  I think one at a time is fine, Your
 9    Honor.
10              THE COURT:  All right.  Case Number 16-cv-432,
11    Santiago Abreu vs. Atabe [sic] Food, Inc., doing business as
12    Riverbend Market and Eatery.
13              MR. LESLIE:  Good afternoon, Your Honor.  My name
14    is Richard Leslie.  I represent the plaintiff Santiago Abreu.
15              THE COURT:  Thank you.
16              MR. LESLIE:  And unfortunately, Your Honor,
17    (inaudible) the first page on the proposed scheduling order,
18    it's got Atabe Foods.  It's Tavin Foods with an N.  I
19    apologize.
20              THE COURT:  Tavin, very good.  Go ahead, sir, and
21    give me your full name.
22              MR. ABBONDANZA:  Mike Abbondanza.
23              THE COURT:  Okay.  And what's your connection with
24    Tavin Foods?
25              MR. ABBONDANZA:  I'm the owner of the restaurant.
```

```
 1              THE COURT:  All right.  Okay.  So there is the
 2   unfortunate rule in our court that a corporation can only
 3   appear by an attorney, cannot appear by pro se litigant.  So
 4   do you have hopes of getting counsel?
 5              MR. ABBONDANZA:  I inquired to having counsel
 6   represent us, but it's cost prohibitive.  It's a small mom
 7   and pop restaurant in rural Colorado, in Bailey.
 8              THE COURT:  In Bailey?
 9              MR. ABBONDANZA:  Uh-huh.
10              THE COURT:  Okay.  Mr. Leslie, you can stay seated,
11   please.  Have you run across this issue before?
12              MR. LESLIE:  Not in this type of case, Your Honor,
13   but if I may, Your Honor, if the Court was inclined to allow
14   Mr. Abbondanza some additional time, we have been desirous of
15   working out solutions with him to -- to achieve as much
16   compliance as is possible in his premises.
17              THE COURT:  Well, that said, let me give you a
18   hypothetical.  This may not be the case, but if -- really the
19   only two practical outcomes are you dismiss or he shuts down
20   his business.  Is it your intent to have him shut down his
21   business?
22              MR. LESLIE:  Absolutely not, Your Honor, absolutely
23   not.
24              THE COURT:  Okay.  I'm not saying it's bad or good.
25   I just want to know where you would go on this, because I
```

1  have had litigants, the government in particular, who is

2  perfectly fine with shutting down a business.  They don't

3  care that it puts people out of work, but I think we ought to

4  care about that.

5         MR. LESLIE:  I appreciate that, Your Honor.  As you

6  know, my firm has several of these cases and helping to

7  educate and reach cooperative agreements involving compliance

8  with the ADA is at the heart of what we're trying to do.

9         THE COURT:  Okay.  What we can do here,

10 Mr. Abbondanza, is you can file a motion -- well, I can try

11 to shop this case around for volunteer counsel, okay.  Do you

12 have any objection, Mr. Leslie?

13        MR. LESLIE:  None, Your Honor.

14        THE COURT:  So we have a panel of lawyers who have

15 signed up with the court to take referrals.  They're not

16 mandated to.  All I can do is ask.  And we ask up to four

17 different lawyers who have expressed an interest in this sort

18 of case, whether they would come in and take the case.  So

19 I'm going to refer this to our pro bono clerk who will try

20 and get an attorney, all right.

21        MR. ABBONDANZA:  That would be wonderful, Your

22 Honor.  And may I make a statement?

23        THE COURT:  Yes, you can.

24        MR. ABBONDANZA:  I have, in fact, engaged counsel

25 in regards to settling this matter.

5

```
 1              THE COURT:  Okay.
 2              MR. ABBONDANZA:  I was told that they would get
 3    back to me.  During the course of that conversation, I
 4    pointed out that the business is, in fact, not in
 5    Breckenridge, and I supplied photographs indicating that it
 6    is totally ADA compliant.  And I actually have those
 7    photographs with me.  I suspect that this particular
 8    plaintiff, who is a serial plaintiff, hasn't even been on
 9    these premises.
10              THE COURT:  Okay, wait a second, wait a second.
11    Does the complaint say it's in Breckenridge?
12              MR. ABBONDANZA:  No, it does not, but that's what
13    counsel said to me when we were having the conversation about
14    potentially setting this.
15              THE COURT:  Right, the complaint states in Bailey.
16              THE CLERK:  (Inaudible).
17              THE COURT:  Right.  I just want to -- wait a
18    second.
19              MR. ABBONDANZA:  Yes, Your Honor.  I was merely
20    reiterating the conversation since I had it personally.
21              THE COURT:  I understand.  Thank you, sir, I
22    appreciate that.  Are you in Park County?
23              MR. ABBONDANZA:  Yes, sir.
24              THE COURT:  And Breckenridge is not in Park County.
25    It's in Summit County, isn't it?
```

```
 1            MR. ABBONDANZA:  I believe so.
 2            THE COURT:  So they do have it as Bailey in the
 3   complaint.  I'm sure Mr. Leslie will probably be happy to
 4   apologize and say he simply got it wrong if, in fact, he said
 5   Breckenridge.
 6            MR. ABBONDANZA:  I wasn't speaking to Mr. Leslie.
 7   I was speaking to one of his other -- one of the principals
 8   in the company because his name is on the letterhead.
 9            THE COURT:  You mean in the law firm?
10            MR. ABBONDANZA:  Yes.
11            THE COURT:  Okay.  Well, he'll apologize for that
12   person, right?
13            MR. LESLIE:  Your Honor, this wasn't a special --
14   Mr. Huff, I'm not sure what he said.  I can reiterate for the
15   Court that we are desirous of an open dialogue.
16            THE COURT:  Okay, good.  Well, did you -- you're
17   probably not, Mr. Leslie, in a position to look at a
18   photograph and say this is or isn't compliant, right?
19            MR. LESLIE:  I keep wanting to stand up, Your
20   Honor.
21            THE COURT:  You can stand if you want to.
22            MR. LESLIE:  If I do, I apologize.  I'll try to
23   remain seated.  Your Honor, each of these cases we refer to
24   an expert and we deal with measurements and photographs of
25   the expert, so -- and the allegation of this, that Mr. Abreu
```

1   was not on the premises, is, of course, false. And not only

2   did we use information provided by Mr. Abreu, but we've hired

3   an expert to review the findings of Mr. Abreu. So --

4        THE COURT: So, Mr. Abbondanza, the thing that I

5   can't do today, no judge could, is decide something based on

6   disputed statements.

7        MR. ABBONDANZA: No, I understand.

8        THE COURT: That's why we have lawsuits.

9        MR. ABBONDANZA: Right.

10       THE COURT: Now, you said you engaged an attorney

11  for settlement -- oh, you mean you talked to him for

12  settlement purposes?

13       MR. ABBONDANZA: Yes.

14       THE COURT: All right.

15       MR. ABBONDANZA: And it was perhaps only 10- to

16  $15,000, which is the same amount of money Mr. Huff said he

17  would take to go away.

18       THE COURT: Okay. Well, what I'll do is -- I don't

19  want to enter an order that may be void because it didn't

20  have the participation of counsel, and I will enter just a

21  short stay in the case to allow us to go through the process

22  of trying to get you an attorney.

23       I think Mr. Leslie will be open to hearing from you

24  on why you think it's ADA compliant, but he also maybe tell

25  you why he thinks it's not. That's what the parties should

1  do anyway is have that kind of discussion that's civil and
2  cordial.
3           So I don't want to enter a scheduling order today
4  because you're not represented, but we are usually able to
5  find an attorney within about two months, so this will not be
6  a long time period, and you can tell Mr. Abreu that we're
7  going to rush as soon as we get something going.  And, of
8  course, you wouldn't be paying for this lawyer.  It's pro
9  bono, all right.
10          MR. ABBONDANZA:  Is there something I need to file
11 specifically?
12          THE COURT:  No.  I think I'm just going to refer
13 it.  So I'm going to enter an order asking our Clerk of the
14 Court to try to find an attorney.  What may happen is you may
15 get a phone call from a lawyer who wants to discuss it with
16 you before he decides whether he is going to take the case or
17 not, okay.
18          MR. ABBONDANZA:  Thank you, Your Honor.
19          THE COURT:  So until, I'm just going to enter a
20 stay, unless there is an objection from Mr. Leslie.
21          MR. LESLIE:  There is none, Your Honor.
22          THE COURT:  All right.
23          MR. LESLIE:  During that time, if I may, if
24 Mr. Abbondanza would like to speak to me before --
25          THE COURT:  Absolutely.

1          MR. LESLIE:  -- the door is open.  I have not
2    spoken with him before today or met him before today.  I
3    can't -- I can't go through every conversation with Mr. Huff,
4    but if he would like, I would like him to have a conversation
5    with me, and we can work on --
6          THE COURT:  So you can call Mr. Leslie from now on,
7    okay?
8          MR. ABBONDANZA:  Very good, Your Honor.
9          THE COURT:  And they won't make you talk to Mr.
10   Huff.  You kind of got off on the wrong foot with him, so
11   let's have him talk to Mr. Leslie.
12         MR. ABBONDANZA:  Well, actually, Mr. Huff was very
13   cordial.
14         THE COURT:  Oh, was he?  He just got it wrong?
15         MR. ABBONDANZA:  We did discuss the case and I
16   brought to his attention -- he looked at the Google maps and
17   saw that there is a ramp.  I sent him photographs showing
18   that there are signs, designated parking and handicap
19   parking, that he wasn't aware of.
20         THE COURT:  Okay.
21         MR. ABBONDANZA:  And that's when he put the stay
22   order in.  And at that point he said, Look, just give me a
23   call and that I did and never heard back until --
24         THE COURT:  Okay.  Well, I'll set it for a status
25   conference in any event, because I think you ought to be in

1   touch with Mr. Leslie in the meantime.
2           MR. ABBONDANZA:  Very good.
3           THE COURT:  I'm confident that he'll take a good
4   faith look at whatever you have and he'll decide whether
5   there is a case, because lawyers are required to do that at
6   all moments anyway, because it's against the rules that we
7   practice under a case where you don't have good faith basis
8   for believing that there is a violation, and he'll take a
9   look at that.
10          And so we'll give you a status conference, let's
11  say the 13th of September, at -- mornings or afternoons
12  better for you?
13          MR. ABBONDANZA:  It doesn't matter, Your Honor.
14          THE COURT:  Do you live down near Bailey?
15          MR. ABBONDANZA:  Yes.
16          THE COURT:  We'll say 11:30.  Okay?
17          MR. ABBONDANZA:  Very good.
18          THE COURT:  And then in the meantime, you may be
19  hearing from an attorney.  You will be talking to Mr. Leslie,
20  and at that time, in September, I will -- if the case is
21  still pending, I'll probably want to know, Mr. Leslie, maybe
22  a more educated view on what you think the violations are.
23  Okay?
24          MR. LESLIE:  Understood, Your Honor.
25          THE COURT:  All right.  Anything further on this

Case 1:16-cv-00432-MEH   Document 55   Filed 04/07/19   USDC Colorado   Page 11 of 14

11

```
 1   case?
 2              MR. LESLIE:  No.  Other than I will not be reaching
 3   out to Mr. Abbondanza.  If he wants to reach out to me, I
 4   will happily return his call or take his telephone call.
 5              THE COURT:  Okay, very good.  Do we have good
 6   contact information for you?
 7              MR. ABBONDANZA:  Not for this gentleman, no.
 8              THE COURT:  Okay, but Mr. Huff has it?
 9              MR. LESLIE:  Mr. Huff has my contact information.
10              THE COURT:  Okay, we need to know it probably for
11   our records too.
12              MR. ABBONDANZA:  My phone number then?
13              THE COURT:  Please.
14              MR. ABBONDANZA:  303-260-8540.
15              THE COURT:  And then the address.
16              MR. ABBONDANZA:  Physical address is 28 -- the
17   business or my home, sir?
18              THE COURT:  The business.
19              THE CLERK:  I just wanted something for counsel to
20   reach him.
21              THE COURT:  Okay.  So where would you want somebody
22   to contact you?
23              MR. ABBONDANZA:  Let's do the home.  28352 Bonanza
24   Drive, Evergreen, Colorado 80439.
25              THE COURT:  What do you serve, by the way?
```

PATTERSON TRANSCRIPTION COMPANY
scheduling@pattersontranscription.com

```
 1              MR. ABBONDANZA:  It's Thai cuisine.
 2              THE COURT:  Okay.
 3              MR. ABBONDANZA:  I've been in the community for
 4    over 20 years, JJ Magwells (ph), and then this start-up here,
 5    family owned and operated.
 6              THE COURT:  And is the name Tavin?
 7              MR. ABBONDANZA:  No.  It's called Riverbend Market.
 8              THE COURT:  Oh, Riverbend Market.
 9              MR. ABBONDANZA:  We're basically a serve and eat in
10    a community where there is no grocery services and very few
11    eating options.
12              THE COURT:  Sure, understand.  I may have even been
13    there myself, I don't know.  Okay.  Anything further from
14    either of you?
15              MR. LESLIE:  No.
16              THE COURT:  Mr. Abbondanza, you're welcome to stay,
17    but you're welcome to leave too.
18              MR. ABBONDANZA:  I think I'll go to work, Your
19    Honor.
20              THE COURT:  Okay, very good.
21              MR. ABBONDANZA:  And I do really appreciate this
22    from the justice standpoint.
23              THE COURT:  Sure.
24              MR. ABBONDANZA:  This particular plaintiff is all
25    over the Internet with the serial filings.
```

13

```
 1              THE COURT:  Well, he has quite a few cases in our
 2   district, but we're open for business 24/7, okay.
 3              MR. ABBONDANZA:  I get -- the frightening part of a
 4   fellow like me is, after he is done, there is others that are
 5   coming back with him.
 6              THE COURT:  There is a lot of federal laws out
 7   there.
 8              MR. ABBONDANZA:  Thank you, Your Honor.
 9              THE COURT:  Thank you.  Nice to meet you too.
10              (Whereupon, the within hearing was then in
11   conclusion at 2:24 p.m.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
1                    CERTIFICATE OF TRANSCRIBER
2    I certify that the foregoing is a correct transcript to the
3    best of my ability to hear and understand the audio recording
4    and based on the quality of the audio recording from the
5    above-entitled matter.
6
7    /s/ Dyann Labo                      March 28, 2019
8    Signature of Transcriber            Date
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```